1

2

3

4                          UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7    MAYTE RODRIGUEZ,                      Case No.  24-cv-01413-JSW

8              Plaintiff,                  **ORDER DENYING PLAINTIFF'S**
                                           **MOTION TO REMAND AND SETTING**
9         v.                               **INITIAL CASE MANAGEMENT**
                                           **CONFERENCE**
10   COSTCO WHOLESALE CORPORATION,
                                           Re: Dkt. No. 7
11             Defendant.

12

13        Now before the court is Plaintiff Mayte Rodriguez's ("Plaintiff") motion to remand.  The

14   Court has considered the parties' papers, relevant legal authority, and the record in this case.  For

15   the reasons stated below, the Court DENIES Plaintiff's motion to remand.

16                                     **BACKGROUND**

17        On September 24, 2021, Plaintiff alleges she slipped and fell on smashed produce at

18   Defendant Costco Corporation's ("Defendant") location at 4801 Central Avenue in Richmond,

19   California.  Plaintiff alleges that the spilled produce was not timely cleaned up and caused her to

20   suffer significant injuries to her hip and knee.  According to a pre-suit settlement demand letter, to

21   treat those injuries, Plaintiff underwent physical therapy, right knee arthroscopy, and medial plica

22   removal.  (Declaration of Nathaniel L. Dunn ("Dunn Decl."), ¶ 6, Ex. B.)

23        Plaintiff's pre-suit settlement demand listed the cost of her medical bills as $62,725.77.

24   Her demand for damages included past pain and suffering, future medical expenses, and future

25   pain and suffering.  (*Id*., ¶ 7, Ex. B.)  On August 17, 2023, Plaintiff filed a Complaint in Contra

26   Costa Superior Court ("Superior Court"), in which she did not allege a total amount of damages

27   but checked off the categories of wage loss, hospital and medical expenses, general damages, loss

28   of earning capacity, future medical expenses, future wage loss, and future general damages, with

United States District Court
Northern District of California

1   no specific amount provided within any of those categories of damages.  (*Id.*, ¶ 7, Ex. A.)  On

2   January 31, 2024, Plaintiff filed a case management statement, in which she alleged that her

3   medical expenses were approximately $70,000.00.  (*Id.*, ¶ 11, Ex. C.)

4          On February 15, 2024, Defendant timely filed an Answer to Plaintiff's Complaint.  On

5   March 8, 2024, Defendant filed a Notice of Removal to federal court and asserted the Court had

6   diversity jurisdiction under 28 U.S.C. Section 1332.  On April 5, 2024, Plaintiff timely filed a

7   Motion to Remand to Superior Court arguing that this Court does not have subject matter

8   jurisdiction because Defendant had failed to establish that the amount-in-controversy is greater

9   than $75,000.

10   **ANALYSIS**

11   **A.**     **Applicable Legal Standards.**

12          Pursuant to 28 U.S.C. section 1441(a), a defendant may remove any civil action brought in

13   a state court to the district court where such action is pending so long as the court to which the

14   case is removed has "original jurisdiction" over the case.  *Matheson v. Progressive Specialty Ins.*

15   *Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003).  However, federal courts are courts of limited

16   jurisdiction.  *See, e.g.*, *Kokkonen v. Guardian Life Ins. Co. Am.*, 511 U.S. 375, 377 (1994).  The

17   party seeking removal has the burden of establishing federal jurisdiction, and the removal statute

18   is strictly construed against removal jurisdiction.  *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1116-

19   17 (9th Cir. 2004).

20          A federal court has original jurisdiction where the case concerns an issue of federal law or

21   there is complete diversity between the parties and the amount in controversy exceeds $75,000.

22   28 U.S.C. §1441(a).  Here, there are no federal claims and the parties do not dispute that there is

23   complete diversity.  The jurisdictional issue thus solely concerns whether the $75,000 amount in

24   controversy requirement has been satisfied.

25          Plaintiff does not allege an amount in controversy in her Complaint.  In the Ninth Circuit,

26   if it is "unclear or ambiguous from the face of a state-court complaint whether the requisite

27   amount in controversy is pled[,] ... a preponderance of the evidence standard" applies.

28   *Guglielmino v. McKee Foods, Inc.*, 506 F.3d 696, 699 (9th Cir. 2007) (citing *Sanchez v.*

United States District Court
Northern District of California

1   *Monumental Life Ins. Co.,* 102 F.3d 398, 402 (9th Cir. 1996)).  In determining the amount in

2   controversy under that standard, courts "consider the allegations in the complaint and in the notice

3   of removal, as well as summary judgment-type evidence." *Chavez v. JPMorgan Chase & Co.*,

4   888 F.3d 413, 416 (9th Cir. 2018).

5         The amount in controversy may include, for example, "damages (compensatory, punitive,

6   or otherwise) and ... attorneys' fees awarded under fee shifting statutes." *Gonzales v. CarMax*

7   *Auto Superstores, LLC*, 840 F.3d 644, 648-49 (9th Cir. 2016); *see also Tanious v. Gattoni*, 533 F.

8   Supp. 3d 770, 777 (N.D. Cal. 2021).  "[T]he amount in controversy ... is determined by the

9   complaint operative at the time of removal and encompasses all relief a court may grant on that

10  complaint if the plaintiff is victorious." *Chavez*, 888 F.3d at 414-15.  Courts consider only the

11  "amount at stake in the underlying litigation, not the likely liability." *Gonzales,* 840 F.3d at 648.

12  The amount at stake in the underlying litigation can include estimates of future damages. *Chavez*

13  888 F.3d at 417 ("the mere futurity of certain classes of damages" does not preclude them from

14  being included in the present amount in controversy).

**B.      Defendant Has Met Its Burden to Show the Amount in Controversy Requirement.**

16        Defendant argues that, cumulatively, Plaintiff's demands for medical costs and for multiple

17  categories of damages alleged in her settlement documents and in her Complaint satisfy the

18  amount in controversy requirement.  Plaintiff counters that Defendant's calculations are

19  "speculative" and argues that if the Court has "any doubt" about removal, then the case must be

20  remanded.  (Motion at 4:18.)  Plaintiff also argues that her initial position on medical damages

21  was merely an "optimistic prediction," and the Court should not use those figures in assessing the

22  jurisdictional requirements.  (*Id.* at 5:10.)

23         In the Ninth Circuit, a "settlement letter is relevant evidence of the amount in controversy

24  if it appears to reflect a reasonable estimate of the plaintiff's claim." *Cohn v. Petsmart, Inc.*, 281

25  F.3d 837, 840 (9th Cir. 2002).  The *Cohn* court also found it significant that the plaintiff made no

26  attempt to disavow the settlement demand or to offer contrary evidence despite opportunities to do

27  so, the settlement demand is entitled to greater weight. *Id.*

28        Here, Plaintiff's estimates for medical expenses in the demand latter and in the settlement

1    conference paperwork—$62,725.77 and $70,000 respectively—"appear to reflect a reasonable

2    estimate of [her] claim" given the nontrivial injury she alleges.  *Id.*  Plaintiff stated that she

3    underwent right knee arthroscopy and medial plica removal as well as physical therapy.  Plaintiff's

4    counsel also later confirmed via email that Plaintiff had undergone arthroscopic knee surgery.

5    (Dunn Decl., ¶¶ 5,14.)  Plaintiff has discussed specific medical procedures on her knee and that

6    she has had physical therapy because of the injury.  (*Id.*, ¶ 5.)  Moreover, Plaintiff had ample

7    opportunity "to disavow the settlement demand or offer contrary evidence" before moving to

8    remand but did not do so.  *Cohn*, 281 F.3d at 840.  The Court thus considers the medical expenses

9    as part of "the amount at stake in the underlying litigation."  *Gonzales,* 840 F.3d at 648.

10        Plaintiff alleges multiple additional categories of damages, and these additional categories

11   cumulatively satisfy the remaining amount in controversy.  Courts in this District often aggregate

12   multiple categories of damages to determine whether a plaintiff has satisfied the amount in

13   controversy requirement.  *See, e.g., Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1035 (N.D.

14   Cal., 2002) (finding that the jurisdictional minimum had been met based on an aggregation of a

15   $23,000 demand in a settlement letter plus a substantial lost wages claim); *see also Tanious*, 533

16   F. Supp. 3d at 778  (aggregating claims for lost wages, punitive and compensatory damages to

17   reach the jurisdictional minimum).

18        Here, having considered Plaintiff's claimed medical expenses, Plaintiff is between $5000

19   and $12,275 short of satisfying the amount in controversy requirement before the Court considers

20   other categories of damages.  In her Complaint, Plaintiff checked the wage loss, medical and

21   hospital expenses, general damages, loss of earning capacity, and "other damage" boxes.  (Dunn

22   Decl., ¶ 9.)  In the "other damage" box she listed "future medical expenses, future wage loss, and

23   future general damages" as categories of damages.  *Id.*  In describing those general damages,

24   Plaintiff stated in her demand that the injury "substantially impaired" her work proficiency,

25   enjoyment of life, and engagement in routine activities.  (*Id.*, ¶ 8.)  Plaintiff's period of wage loss

26   alone, according to the Complaint, may extend to 30 months or more.  A 30-month period of wage

27   loss could, by a preponderance of the evidence standard, satisfy the remaining $5000-$12,275

28   required to meet the jurisdictional threshold.  *See, e.g., Tanious*, 533 F. Supp. 3d at 778 ("Not only

does Plaintiffs' claim for lost wages exceed $75,000 on its own, but Plaintiffs' other claims for punitive and compensatory damages further support the finding that the amount-in-controversy requirement is met.").

Defendant also highlights jury verdicts in cases involving knee injuries that result in substantial damages awards ranging from roughly $80,000 to more than $500,000.  (Dunn Decl., ¶¶ 15-19.)  "[S]ettlements and jury verdicts in similar cases can provide evidence of the amount in controversy, [but] the cases must be factually identical or, at a minimum, analogous to the case at issue." *Mireles v. Wells Fargo Bank, N.A.*, 845 F. Supp. 2d 1034, 1055 (C.D. Cal., 2012).  Courts do not require that comparable damage awards be "perfectly analogous." *Simmons,* 209 F. Supp. 2d at 1034.  Here, in addition to her knee injury, Plaintiff alleges multiple other kinds of bodily injury, including hip and knee pain.  (Dunn Decl., ¶¶ 5-6.)  That allegation strengthens the analogy to the verdicts cited by Defendant.  The comparable jury verdicts corroborate Defendant's other arguments that, by a preponderance of the evidence standard, the amount in controversy requirement has been met.

In sum, Defendant has met the burden of establishing that the amount in controversy requirement has been met.  The reasonable medical expenses alleged in the settlement document aggregated with the other categories of damages Plaintiff alleges satisfy the $75,000 jurisdictional minimum.

**CONCLUSION**

For the reasons stated above, the Court DENIES Plaintiff's motion to remand.  The parties shall appear on December 6, 2024, at 11:00 a.m. for an initial case management conference.  The parties' joint case management conference statement shall be due by November 29, 2024.

**IT IS SO ORDERED**.

Dated: October 24, 2024

JEFFREY S. WHITE
United States District Judge